# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

LORRAINE LAWRENCE-WHITTAKER, *et al.*,

v.

COLONIAL PIPELINE COMPANY

Civil Action No. CCB-21-2526

## MEMORANDUM

This action involves a property rights dispute between the Colonial Pipeline Company and residents of Cattail Woods, a neighborhood in Western Howard County. Now pending before the court is Colonial Pipeline's Motion to Dismiss. (ECF 11, Def. Mot.) The issues have been fully briefed, with the plaintiffs[1] filing an Opposition (ECF 15, Pl. Opp.), and Colonial Pipeline filing a Reply (ECF 16, Def. Reply). The motion is ready for disposition, and no hearing is necessary. *See* Local Rule 105.6. For the reasons set forth below, the court will grant Colonial Pipeline's motion to dismiss.

## BACKGROUND

The Colonial Pipeline Company operates one of the largest fuel pipelines in the United States. (ECF 2, Compl. ¶ 7.) The pipeline stretches from Maine to Louisiana. (*Id.*) One part of the pipeline crosses over Howard County, Maryland, on land bordering the Cattail Woods

---

[1] The court refers to the residents of Cattail Woods as "plaintiffs" in the collective sense. Individually, the plaintiffs include the following people: Lorraine Lawrence-Whittaker, Eric M. Whittaker, Michael Small, Mary Small, Gregg Berson, Nicole Berson, Chad R. Koele, Peggy J. Koele, Bijendxra Shrestha, Bindu Shrestha, Darron Durlach, and Amanda Shafer.

1

neighborhood. (*Id.*) Colonial Pipeline has two easements on this land. (*Id.* at ¶ 11.) These easements allegedly provide Colonial Pipeline the right to inspect, maintain, and protect the underlying pipeline. (*Id.*) Colonial Pipeline contends[2] these easements include the right to cut and remove all trees that may interfere with the operation and repair of the pipeline. (ECF 11-1, Def. Mem., at 2.)

In early August 2021, Colonial Pipeline notified residents of Cattail Woods that the company intended to cut maple trees on the residents' land as a type of maintenance provided for by the easements. (*Id.* at ¶ 14.) The residents soon learned their trees were not scheduled for a mere trim; Colonial Pipeline intended to clear cut substantial portions of their trees from "ground to sky." (*Id.* at ¶ 16.) Residents around the neighborhood strongly opposed Colonial Pipeline's plans. (*Id.* at ¶¶ 19–20.) If Colonial Pipeline wanted to cut the maple trees, the residents declared they would seek a temporary restraining order. (*Id.* at ¶ 20.) On September 2, 2021, Colonial Pipeline notified the residents that the company planned to cut their trees on September 7, 2021. (*Id.* at ¶ 19.)

On September 3, 2021, the residents filed suit in the Circuit Court for Howard County to temporarily restrain and permanently enjoin Colonial Pipeline from "trespassing, cutting, and/or destroying" the maple trees located near the back of their respective properties. (*Id.* at p. 9.) The Circuit Court acted swiftly, denying the plaintiffs' request for a temporary restraining order just hours after receiving the complaint. Howard County Circuit Court Judge Richard S. Bernhardt explained that:

---

[2] Each party provides a different interpretation of the easements in question. Colonial Pipeline, in support of its interpretation, provides the text of the easements and requests that the court take judicial notice of the documents. (*See* ECF 11-1, Def. Mem., at 2.) The court need not interpret the scope of the easements to resolve the present motion; the court describes these facts to provide context and background information only. Nothing described in this Memorandum shall constitute a finding of fact.

> Upon review of the record, it does not appear that Plaintiffs have notified the Defendant that Plaintiffs are seeking a temporary restraining order, as required by MD Rule 15-504. Although Plaintiffs represent they have told the Defendant in the past that they would seek a temporary restraining order and/or preliminary injunction if Defendant persisted in its plans to clear Plaintiffs' trees, this does not relieve Plaintiffs of the affirmative duty to notify the Defendant of the actual filing of a temporary restraining order. Additionally, Plaintiffs have not posted a bond, as required by MD Rule 15-503, or requested a waiver of bond. Further, Plaintiffs cannot demonstrate a real probability of success on the merits given the availability of self-help to Defendant concerning trees encroaching its easement. *See Melnick v. C.S.X. Corporation, et al.*, 312 Md. 511 (1988).

(ECF 1-6.)

As promised, Colonial Pipeline began cutting the plaintiffs' trees on September 7, 2021. By noon that day, the plaintiffs had filed another motion for a temporary restraining order. (ECF 1-7.) And by 4:15 p.m. Howard County Circuit Court Judge Mary M. Kramer had granted the plaintiffs' motion. (ECF 1-8.) But Judge Kramer's order was too late: Colonial Pipeline had already finished cutting the trees.[3]

In early October, Colonial Pipeline removed the plaintiffs' complaint to federal court (ECF 1-10) and then filed the present motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (ECF 11.)

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) tests whether the court has jurisdiction over the subject matter of the dispute.[4] Under Article III of the Constitution, a "case" or "controversy" must exist throughout all stages of federal litigation, not just when a lawsuit is filed. *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990). For the court to possess

---

[3] *See* ECF 15, Pl. Opp., at 1 ("Plaintiffs cannot deny the fact that the Defendants went ahead and marred their trees despite being on notice that a TRO was pending that morning[.]"); *see also* ECF 11-1, Def. Mem., at 3 ("Importantly, by the time Plaintiffs' Emergency Motion was granted, however, Colonial had already completed the tree cutting on its easement.").

[4] Colonial Pipeline has also moved to dismiss the Complaint (ECF 2) under Rule 12(b)(6). Because the court disposes of the case under Rule 12(b)(1), the court need not state the standard under Rule 12(b)(6).

3

jurisdiction in the present case, "it is not enough that a dispute was very much alive when suit was filed." *Id.* (citations omitted). Because mootness creates a jurisdictional defect, Colonial Pipeline's motion is properly considered under Rule 12(b)(1). *Stone v. Trump*, 400 F. Supp. 3d 317, 333 (D. Md. 2019). A motion pursuant to Federal Rule of Civil Procedure 12(b)(1) should be granted "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999); *see also United States ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 347–48 (4th Cir. 2009). The plaintiffs have the burden of proving that subject matter jurisdiction exists. *Jadhav*, 555 F.3d at 347–48; *see also Piney Run Preservation Ass'n v. Cnty. Comm'rs of Carroll Cnty., Md.*, 523 F.3d 453, 459 (4th Cir. 2008).

## ANALYSIS

"'[M]ootness goes to the heart of the Article III jurisdiction of the courts.'" *Castendet-Lewis v. Sessions*, 855 F.3d 253, 260 (4th Cir. 2017) (quoting *Friedman's, Inc. v. Dunlap*, 290 F.3d 191, 197 (4th Cir. 2002)). "A claim becomes moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Grutzmacher v. Howard Cnty.*, 851 F.3d 332, 349 (4th Cir. 2017) (citing *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)) (internal quotation marks omitted). In other words, the court may not issue "an opinion advising what the law would be upon a hypothetical state of facts." *See Lewis*, 494 U.S. at 477 (quoting *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 242 (1937)).

The present case is moot. The plaintiffs filed their complaint to stop Colonial Pipeline from cutting the plaintiffs' trees located near the back of their respective properties. (*See* ECF 2, Compl., at ¶ 28.) Colonial Pipeline, at this point, has already completed the tree cutting. (*See* ECF 11-1, Def. Mem., at 3.) The plaintiffs concede this fact, stating in their Opposition that they "cannot

4

deny the fact that the Defendants went ahead and marred their trees[.]" (*See* ECF 15, Pl. Opp., at 1.)

Dedicating just a few sentences of their Opposition to this threshold issue, the plaintiffs make a single argument for why this case is not moot. The plaintiffs contend Colonial Pipeline acted on a wrongful belief that it had the right to destroy the plaintiffs' trees, and will do so again in the future. (*Id.* at 1–2.) But the plaintiffs' complaint contains no allegations that Colonial Pipeline has further plans to cut the plaintiffs' trees. And Colonial Pipeline submits that it "has no plans to conduct another tree trimming." (ECF 11, Def. Mem., at 5.)[5] Even without Colonial Pipeline's representation, dismissal is appropriate because the complaint fails to allege that Colonial Pipeline intends to cut *anything* other than the trees it already cleared. *See Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir.1982)) (explaining that a defendant may challenge subject matter jurisdiction by contending "that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based"); *La Fuente v. Lamone*, ELH-16-2743, 2017 WL 2439143, at *4 (D. Md. June 5, 2017) (dismissing complaint on mootness grounds based on a facial challenge).[6]

The plaintiffs contend that they still seek injunctive relief from "any further like actions" from Colonial Pipeline. (*See* ECF 15, Pl. Opp., at 2.) But a plaintiff cannot simply point to their requested relief to resuscitate a case that is otherwise moot. "The purpose of an injunction is to

---

[5] "It is well established that a defendant's 'voluntary cessation of a challenged practice' moots an action only if 'subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Grutzmacher v. Howard Cnty.*, 851 F.3d 332, 349 (4th Cir. 2017) (citations omitted). While other defendants must satisfy a "heavy burden" to persuade courts that they will not revert to the challenged behavior, Colonial Pipeline did not voluntarily *cease* its conduct. In fact, Colonial Pipeline succeeded in doing exactly what it promised it would do: cut the plaintiffs' trees. On the current record, dismissal is appropriate because there is "no hint" that Colonial Pipeline has any intention of cutting or doing anything more. *See id.* (citing *Troiano v. Supervisor of Elections*, 382 F.3d 1276, 1284–85 (11th Cir. 2004)).

[6] Unpublished cases are cited not for their precedential value, but for their persuasive reasoning.

5

prevent future violations," which means "the party seeking such relief must satisfy the court that prospective, injunctive relief is needed." *Davison v. Rose*, 19 F.4th 626, 641 (4th Cir. 2021) (quoting *United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953)) (internal quotation marks and brackets omitted). The plaintiffs have failed to tether their requested relief to any future harm. Indeed, it is unclear what foliage remains after Colonial Pipeline "marred" and "mutilat[ed] said trees." (ECF 15, Pl. Opp., at 1.) The likelihood of Colonial Pipeline returning to cut the plaintiffs' trees again appears slim based on allegations in the complaint itself. In their initial filing, the plaintiffs alleged that Colonial Pipeline's cutting would "permanently" misshape the trees and "forever" alter the landscaping, which suggests the trees are not likely to regrow over the disputed area. (ECF 2, Compl., at ¶ 16.)

The plaintiffs have not amended their complaint to specify which, if any, trees remain under threat from Colonial Pipeline. On the face of this record, "it appears that the only concrete interest in the controversy has terminated." *See Lewis*, 494 U.S. at 480; *see also Flast v. Cohen*, 392 U.S. 83, 95 (1968) (citation omitted) ("[N]o justiciable controversy is presented . . . when the question sought to be adjudicated has been mooted by subsequent developments."). The plaintiffs would have the court opine on the "*long term* risks and consequences of the Defendant's incorrect views" in order to "prevent future like harms." (ECF 15. Pl. Opp., at 2, emphasis added.) The court declines to provide "unnecessary judicial pronouncements" on such speculative and intangible concerns. *See Lewis*, 494 U.S. at 480.[7] Accordingly, the court will grant Colonial Pipeline's motion to dismiss.

---

[7] Although the court resolves the present dispute on mootness grounds, the complaint may also be dismissed for lack of standing. Because Colonial Pipeline already cut the trees near its easement, the plaintiffs have not sufficiently alleged that Colonial Pipeline poses any *further* "actual or imminent threat" to their interests. *See Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016), *as revised* (May 24, 2016) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). The general, speculative fear that Colonial Pipeline will return to cut the trees at *some point* does not satisfy the requirements of Article III. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 412–13 (2013) (rejecting speculative allegations of harm).

## CONCLUSION

For the foregoing reasons, the court will grant Colonial Pipeline's motion to dismiss under Federal Rule of Civil Procedure 12(b)(1). The court expresses no view as to the underlying merits of the dispute. Because the court grants the motion to dismiss for lack of jurisdiction, the plaintiffs' complaint will be dismissed without prejudice. *See Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 185 (4th Cir. 2013) (noting that a dismissal based on a defect in subject matter jurisdiction "must be one without prejudice, because a court that lacks jurisdiction has no power to adjudicate and dispose of a claim on the merits").

A separate Order follows.

July 22, 2022
Date

_____CCB_____
Catherine C. Blake
United States District Judge